IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Franklin Tolbert, ) | Civil Action No. 6:05-2824-CMC-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income benefits ("SSI").

## ADMINISTRATIVE PROCEEDINGS

On December 31, 2002, the plaintiff filed applications for DIB and SSI alleging disability beginning June 1, 2001. The applications were denied initially and on reconsideration. On November 7, 2003, the plaintiff requested a hearing, which was held on June 10, 2004. Following the hearing, at which the plaintiff, his attorney and a

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

vocational expert appeared, the administrative law judge considered the case *de novo*, and on April 8, 2005, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on August 25, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant engaged in substantial gainful activity until July 31, 2001.

(3)     The claimant's herniated discs, right femoral head abnormality, hepatitis, reflux disease and major depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

(4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6)     The claimant has the following residual functional capacity: The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. He can stand or walk for about six hours per eight-hour workday and can sit for about six hours per workday, although he needs a sit/stand option. He can only occasionally push and pull with his lower extremities, balance, stoop, kneel, crouch, crawl or climb ramps and stairs. He can never climb ladders, ropes or scaffolds and can only perform simple, three to four step tasks.

(7)     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

(8)     The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

2

(9)    The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

(10)    The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

(11)    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

(12)    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.15 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as building supply sales representative (Dictionary of Occupational Titles (DOT) #274.357-018), office helper (DOT #239.567-018) and appliance assembler (DOT #723.684-010). There are 2170, 29,400 and 700 of these jobs in the South Carolina economy, respectively. There are 240,000, over one million and 140,000 in the national economy.

(13)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

3

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

4

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 54 years old at the time of the ALJ's decision. He has more than a high school education, and his past work experience includes employment as a renovation coordinator, drywall finisher, truck driver and carpenter. He alleges that he became disabled on June 1, 2001.

The record reveals that the plaintiff has sought the majority of his medical treatment through the Charleston Department of Veterans Affairs (VA). On April 2, 2002, he visited the VA complaining of low back pain and gastroesophageal reflux disease (GERD). Upon examination, he had a positive straight leg raise, and the examiner's impression was GERD and low back pain. X-rays of the plaintiff's lumbar spine, performed on the same date, showed only mild spondylosis at L4-5 with mild disc space narrowing.

5

The plaintiff returned to the VA on April 10, 2002, again complaining of back pain and left thigh numbness. His GERD had improved however, due to Zantac. Upon examination, the plaintiff complained of pain with movement of his extremities, but he had no edema. The examiner also found the plaintiff to have hepatitis C. The plaintiff underwent pelvic x-rays, due to bilateral hip pain. These showed sclerosis of the right femoral head (Tr. 272-96).

On April 15, 2002, the plaintiff returned to the VA and complained of a seven-year history of depressed mood, possible mild post-traumatic stress disorder and a history of alcohol and drug use. He specifically complained of two nightmares per week, without flashbacks or avoidant behavior. He also appeared highly functional and seemed sincere with a desire to quit drinking. His appearance was clean, but his mood was down and depressed with a decreased affect. The examiner diagnosed the plaintiff with major depression and alcohol dependence (Tr. 143-45).

The plaintiff underwent an abdominal ultrasound on May 14, 2002, due to his hepatitis. This showed diffusely increased echogenicity to his liver, consistent with hepatocellular disease, but was otherwise unremarkable (Tr. 270). The plaintiff then returned to the VA on May 22, 2002, for further psychological treatment. He complained of difficulty concentrating, memory problems, sadness, loneliness, anxiousness, difficulty sleeping and marital distress. However, he also noted that he had worked full-time as the co-owner of a construction and remodeling company the previous month, earning $1700. Upon examination, the plaintiff was neat, alert, cooperative, and social. He also had a normal gait and posture. He was euthymic, with no hallucinations, delusions or suicidal ideation. His memory was also not impaired and the examiner found his alcohol dependence to be in early full remission (Tr. 115-41).

The plaintiff again visited the VA on June 27, 2002, complaining of back and leg pain. On examination, he had no edema and was in no acute distress. A left knee x-ray was also completely normal, as was a left femur x-ray (Tr. 264-69). On August 14, 2002,

6

the plaintiff noted that he stopped taking Prozac after one month due to sexual side effects. He also complained of back pain and continued depression with sleep disturbance, lack of energy, lack of motivation, lack of interests and poor concentration. He had a depressed mood and affect, as well. The examiner's impression was again a major depressive disorder, with his alcohol abuse in remission. The examiner diagnosed Remeron for the plaintiff's mood and sleep (Tr. 111-12).

The plaintiff underwent a MRI of his hips on August 15, 2002, which showed an old area of osteonecrosis in the right femoral head, minimal fluid in the right iliopsoas bursa, and no acute changes. A lumbar MRI showed a disc herniation superimposed on a disc bulge at L5-S1, and a diffuse bulge at L4-5 (Tr. 255, 260-63). The plaintiff then again complained of back and left leg pain on October 28, 2002. His hip pain had improved at that time. His examination was essentially unremarkable as well, apart from positive straight leg raising on the right. The examiner also found the plaintiff's right hip necrosis to be not active (Tr. 256-59).

Dr. David J. Funsch saw the plaintiff on March 26, 2003, for a psychiatric disability evaluation. The plaintiff explained that he stopped working in February 2002 due to increasing back pain. He also reported a history of depressive symptoms with sadness, irritability, lack of motivation, a dislike of being around others, low energy, weight loss, decreased appetite, low attention span, intermittent suicidal thoughts, restless sleep and nightmares. The plaintiff also noted that he lived alone, cooked for himself, cleaned the house, did laundry and traveled in buses or taxis. He could not drive as his license was suspended for failure to pay child support. On examination, the plaintiff was neatly groomed and attired. His thought associations were linear and goal directed. His mood appeared moderately depressed, and his affect was only slightly constricted. His memory also appeared intact, and he could recall four out of four objects after one minute. Dr. Funsch's impression was recurrent, moderate major depression and substance abuse in

7

remission.  He also believed the plaintiff could handle his personal and financial affairs (Tr. 149-54).

Dr. Theodolph H. Jacobs saw the plaintiff on March 27, 2003, for another disability evaluation.  The plaintiff complained of hepatitis C with fatigue, low back pain due to a ruptured disc at L4-5, chronic left hip pain, and reflux disease.  The plaintiff also noted that he continued to not use any alcohol.  Upon examination, he ambulated without difficulty.  His spine was straight, with only diffuse tenderness over the L4-5 region, and no point bony tenderness.  His fingers, hands, wrists, forearms, elbows, upper arms and shoulders were all within normal limits.  He had diffuse tenderness to palpation over the left and right greater trochanter without any inflammation, redness, heat or swelling.  He could also perform a deep knee bend, stand on either leg unassisted, and flex his trunk normally (Tr. 155-58).

The plaintiff returned to the VA on May 15, 2003, when he was in no apparent distress, to discuss a previous colonoscopy.  The test showed a single adenomatous polyp in his sigmoid, which had been removed.  His examiner also noted that the plaintiff needed clearance from his psychiatric doctor stating that it was safe to start Interferon (Tr. 245-48). On June 23, 2003, an abdominal ultrasound showed gallbladder sludge, but was otherwise unremarkable (Tr. 243-44).  On July 14, 2003, the plaintiff complained of a headache and back pain.  On July 15, 2003, he again complained of severe headaches with intermittent dizziness.  He denied any neck pain, and also complained of arm and leg cramps.  His physical examination was essentially unremarkable apart from a grade 1-2 systolic murmur and an enlarged liver.  The examiner's impression was muscle contraction headache or migraine  (Tr. 227-42).

The plaintiff followed up his hepatitis at the VA on August 21, 2003, when he still had not received clearance for Interferon treatment.  He was told to return to the clinic in three to four months.  The doctor was unable to give the plaintiff a hepatitis A vaccine

due to a manufacturer backorder, and he was to obtain a hepatitis B vaccine in one month (Tr. 217-21).  On November 4, 2003, the plaintiff again complained of low back pain and leg weakness as he had "to do a lot of heavy lifting."  His strength was 5/5 in all areas tested, however, apart from his IP which was 4/5.  His knee reflexes were also diminished (Tr. 212-16).

The plaintiff underwent another lumbar MRI on December 23, 2003, which revealed a diffuse central disc herniation at L5-S1 and a central herniated nucleus pulposus at L4-5 (Tr. 210-11).  The plaintiff again complained of pain on January 12, 2004.  He also explained that his mood had been good.  The examiner's impression was leg numbness, not explained by the MRI (Tr. 205-09).  On March 30, 2004, Dr. Christopher J. Chittum, M.D., noted that a new MRI showed a small left-sided L3-4 disc with nerve compression.  This was very small, and Dr. Chittum wanted the plaintiff to try physical therapy (Tr. 200-02).

At the hearing, the plaintiff testified that he suffers from acid reflux, hepatitis, depression, posttraumatic stress disorder, and a pinched nerve in his back with back pain, hip pain, leg pain, nightmares, flashbacks, a desire to be alone, poor sleep, poor grip, and excessive sleeping.  He also reported that his medication makes him sleep all of the time.  The plaintiff further claimed that he is unable to bend, twist, stoop, crouch, climb stairs, or stand more than 10 to 15 minutes at a time.  He testified that he does attend church.

The ALJ then called a vocational expert.  Asked first to comment on the nature of the plaintiff's past employment, the VE inquired whether she should include the work after June 2001, the alleged onset date.  The ALJ replied "I would be inclined not to, given the length of time, although it was SGA," but asked for it to be included (Tr. 354-55).  The VE testified that the plaintiff acquired skills as a "renovation contractor" (Tr. 357) during June and July 2001  that could be considered along with his experience as a carpenter (Tr. 355).  Based on the functional capacity assessment given in the decision (Tr. 357-58), the

9

VE testified that the plaintiff could transfer skills into the jobs of building supply sales representative and materials coordinator (Tr. 358-59). Using his "skills with hand and power tools," he could work as an appliance assembler (Tr. 359). He could also do unskilled work as an office helper. On cross examination, the VE testified that there would be no jobs available to an individual with the vocational factors and functional capacities specified by the judge, if that person fell asleep for one hour during the workday (Tr. 361). Finally, the ALJ inquired whether the VE's opinions were consistent with the DOT. The VE replied that they were based on her own observations, job analyses, and experience as a vocational consultant (Tr. 363).

## ANALYSIS

The plaintiff alleges disability commencing June 1, 2001, due to back and left hip problems and hepatitis C (Tr. 67). The ALJ found that the plaintiff was not disabled because he could perform a significant range of light work and could perform jobs existing in significant numbers in the national economy such as building supply sales representative, office helper, and appliance assembler (Tr. 21). The plaintiff alleges that the ALJ erred by (1) failing to properly consider his subjective complaints, and (2) failing to properly evaluate whether he could perform jobs existing in significant numbers at step five of the sequential evaluation process.

The plaintiff first argues that the ALJ failed to properly consider his subjective complaints.

> In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. First, because pain alone, no matter how disabling, cannot create a "disability" under the Social Security Act without an underlying medical condition that causes the pain, the ALJ must determine whether the claimant has produced medical evidence of a "medically determinable impairment which could reasonably be expected to produce . . . . the actual pain, in the amount and degree, alleged by the

10

> claimant." *Craig*, 76 F.3d at 594 (emphasis added). It is
> important to note that while the claimant must introduce
> objective medical evidence of an impairment, the evidence
> must only demonstrate that the impairment reasonably could be
> expected to produce the pain alleged. *Id.* at 595. Second, if,
> and only if, the ALJ finds that the claimant has produced such
> evidence, the ALJ must then determine, as a matter of fact,
> whether the claimant's underlying impairment actually causes
> her alleged pain. *Craig*, 76 F.3d at 595. The ALJ need not find
> either that the claimant's pain is real, or, if he finds that it is real,
> that it is caused by her underlying medical condition if such
> findings are "inconsistent with the available evidence."

*Morgan v. Barnhart*, 142 Fed.Appx. 716, 2005 WL 1870019, **5-6 (4th Cir. 2005) (citing

*Craig v. Chater,* 76 F.3d 585, 594-95 (4th Cir. 1996).

"It is only after a claimant has met her threshold obligation of showing by

objective medical evidence a medical impairment reasonably likely to cause the pain

claimed, that the intensity and persistence of the claimant's pain, and the extent to which

it affects her ability to work, must be evaluated."  *Craig*, 76 F.3d at 595 (citing 20 C.F.R.

§§416.929(c)(1) & 404.1529(c)(1)).  A claimant's symptoms, including pain, are considered

to diminish his capacity to work to the extent that alleged functional limitations are

reasonably consistent with objective medical evidence and other evidence.  20 C.F.R.

§§404.1529(c)(4) and 416.929(c)(4).

> [O]nce a medically determinable impairment which could
> reasonably be expected to produce the pain alleged by the
> claimant is shown by objective evidence, the claimant's
> allegations as to the severity and persistence of her pain may
> not be dismissed merely because objective evidence of the
> pain itself (as opposed to the existence of an impairment that
> could produce the pain alleged), such as inflamed tissues or
> spasming muscles, are not present to corroborate the existence
> of pain.

*Craig*, 76 F.3d at 595.  In evaluating the intensity and persistence of a claimant's symptoms,

including pain, all of the evidence, including statements from the claimant about how the

symptoms affect him or her, should be considered.  20 C.F.R. §§416.929(a) & 404.1529(a).

11

"[A] formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ found that the plaintiff's testimony was "not fully credible concerning the severity of his symptoms and extent of his limitations. Neither the severity nor the extent are supported by the objective medical evidence of record" (Tr. 17-18). Elsewhere in the decision, the ALJ found that the plaintiff performed substantial gainful activity at least

12

through July 31, 2001, and "this work and the claimant's unimpressive work record detract from his credibility" (Tr. 14-15). The ALJ further noted that the plaintiff attends church and goes to Bible study. The ALJ stated (Tr. 18) that there were inconsistencies between the plaintiff's testimony at the hearing and what he reported in a report of contact (Tr. 147-48) and on a psychological evaluation (Tr. 149-54). Specifically, the plaintiff reported that he "cooked for himself, cleaned the house, did laundry and traveled in buses and taxis for transportation" (Tr. 16, 18), but at the hearing he testified that he did not perform such activities of daily living. The ALJ also noted that the plaintiff told his physician in November 2003 that he had pain because he had to do a lot of heavy lifting (Tr. 17, 213-14).

As argued by the plaintiff and as shown above, the ALJ bypassed the first prong of the above test and instead considered only the plaintiff's credibility. Accordingly, the case should be remanded to the ALJ for consideration of whether the plaintiff has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain he alleges. *See Craig*, 76 F.3d at 596 ("In the instant case, the ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only then, should it undertake an assessment into the credibility of Craig's subjective claims of pain."). If the ALJ determines that the plaintiff does have such an impairment, the ALJ should then assess his credibility. However, importantly, once the plaintiff shows by objective evidence that he has such an impairment, the plaintiff's "allegations as to the severity and persistence of [his] pain may not be dismissed merely because objective evidence of the pain itself (as

13

opposed to the existence of an impairment that could produce the pain alleged), . . . are not present to corroborate the existence of pain."

The plaintiff next argues that the ALJ failed to properly evaluate whether he could perform other jobs existing in significant numbers in the national economy. Upon cross examination by the plaintiff's attorney, the VE testified that if the plaintiff had to sleep as much as one hour during the workday the jobs she had identified would be eliminated (Tr. 361). The defendant argues that the plaintiff's subjective complaint of sleepiness caused by side effects of his medications was properly discredited. However, as set forth above, the ALJ failed to properly consider the plaintiff's subjective complaints. The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Accordingly, upon remand and proper consideration of the plaintiff's subjective complaints, the ALJ should consider in accordance with the above law whether this limitation should be included in the hypothetical.

The plaintiff also argues that he is disabled under the Medical Vocational Guidelines ("the Grids"), Listing 201.14.[2] However, it appears that substantial evidence supports the Commissioner's finding that the plaintiff had transferable skills as a carpenter. Accordingly, this listing is inapplicable.

Lastly, the plaintiff argues that the jobs listed by the VE conflict with their description in the DOT. Specifically, the VE was asked to assume a person who could do three- to four-step functions (Tr. 358). However, the VE apparently misconstrued this as limiting the person to jobs with a specific vocational preparation ("SVP") of 4 (Tr. 359).

---

[2]The plaintiff originally cited Listing 201.06, which is the wrong age category, but corrected the citation in his reply brief.

14

Accordingly, upon remand, the ALJ should take VE testimony as to whether the identified jobs fit within the finding that the plaintiff is limited to four-step tasks.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

July 7, 2006

Greenville, South Carolina

15